NEYHARDT (FOURTH NAT. BANK v.). See Case No. 4,991.

N. H. QUIMBY, The (LUBKER v.). See Case No. 8,586.

---

## Case No. 10,219.

### The NIAGARA.

#### [6 Ben. 469.] [1]

District Court, S. D. New York. April, 1873.

TUG-BOAT AND TOW—NEGLIGENCE—LOOKOUT.

A tug-boat, having a schooner on her port side, and two schooners on her starboard side, was towing them through Hell Gate. In going up the channel between Blackwell's Island and Long Island, a schooner passed them and got some distance ahead, but at the upper end of Blackwell's Island she lost the wind and lost great part of her headway. The pilot of the tug did not observe this as soon as others on the tow did and ran up quite close to her, and then stopped till the schooner got the wind again and went on, when he started his tug ahead, endeavoring to pass between the schooner and the Long Island shore. This movement and the

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

set of the tide carried the tow too near the Long Island shore, and the starboard schooner struck on rocks and began to leak, and afterwards sank: *Held*, that the pilot of the tug was in fault for not sooner seeing that the schooner ahead had lost her way, and taking measures accordingly, and that the tug was liable for the damage.

This was a libel by the owners of the schooner Margaret Powell to recover damages for her sinking, while in tow of a steam-tug. The tug had taken in tow three schooners. one on her port side and two on her starboard side, to tow them through Hell Gate, the Powell being the outside schooner on the starboard side. While passing Brown's Point, opposite the eastern end of Blackwell's Island, the Powell struck a rock, causing her to leak, so that, when she reached near Little Hell Gate. she was cast off and sank.

Beebe, Donohue & Cooke, for libellants.
Benedict. Taft & Benedict, for claimants.

BLATCHFORD, District Judge. The libel attributes the loss of the Margaret Powell to the negligence of the tug, in not slowing when she found that the schooner ahead had substantially lost her headway, in not passing between the said schooner and the Blackwell's Island shore, in passing between the said schooner and the Long Island shore, in changing her course so as to pass Astoria Point in such close proximity thereto as to be unable to prevent the tide and her own headway from causing the Margaret Powell to be carried upon the rocks, in not backing and turning around when she found she was in such close proximity to the rocks, and in not having power enough to control the tow against its headway and the tide. The defence set up in the answer is, that the schooner ahead lost, by the temporary dying out of the wind, a large part of her headway; that the engine of the tug was at once stopped; that the tug and her tows were carried on by the tide alone until the schooner ahead got out of the way, when the engine of the tug was at once set in motion, to proceed; that, by reason of such stoppage. the tug and her tow were carried over by the tide, towards the Long Island shore; that. in spite of every effort of those in charge of the tug, the Margaret Powell was so carried over; that, after passing Brown's Point, the master of the Margaret Powell sung out that his vessel had struck and was leaking; that, after reaching nearly to Little Hell Gate, another tug was signaled, which took hold of her and towed her till she sank; that the Margaret Powell was not properly supplied with pumps, nor were the pumps or pump which could be used on board of her used, as should have been done. otherwise she would have been kept afloat; and that the accident was solely caused by the sudden dying away of the wind. for which the tug is in no way responsible.

I think that the case on the part of the libellants is made out, and that the defence

fails on the evidence given by those who were navigating and in charge of the tug.

Hibler, the master of the tug, who was in her pilot house, and steering her, testifies, in his direct examination, that the schooner passed him when he was almost at the lower end of Blackwell's Island; that, at that time, he was going full speed; that the schooner got pretty near up to the other end of the Island, a good distance off; that he slowed down when he was within 300 feet of her; that he did not see that she lost the wind until he got within 100 feet or so of her; that, when he was about ten or fifteen feet off from her he stopped his engine; that he did not reverse it; that the schooner then got the wind and went on, and he rang to go ahead; and that the tide and his stopping was the cause of their being carried over towards Long Island shore. On his cross-examination he testifies, that the schooner got 700 or 800 feet ahead of him, when he had got about half way up the length of the island; that he could not see her, at that time, because she was hidden from him by the foresail of the vessel in tow on his port side, and that the same cause prevented his seeing her till he got within fifteen or twenty feet of her; and that then he came unexpectedly on her, and stopped his engine, and discovered that she had lost her wind. On his redirect examination, he reiterates the statement that the foresail of the vessel on his port side prevented his seeing the schooner ahead until he was right upon her; and that he went quite a distance with the schooner out of his sight, 400 or 500 feet.

Ward, the engineer of the tug, testifies, that, when he got the bell to slow, he looked out and saw the schooner 200 or 300 feet ahead; and that he got the bell to stop when the schooner was ten or fifteen feet off.

The deck hand on the tug testifies that he noticed the schooner when he heard the bell to slow, and saw that she had not wind enough to sail.

The necessary conclusion from this testimony is, that the tug did not stop her engine soon enough, or as soon as it might have been stopped, if her master had been in a position to observe sooner the losing of the wind by the schooner ahead, or had observed it as soon as, by careful attention, he might have observed it. With the wind as it was, the tendency to have it cut off by the buildings on the island from a vessel going up on the Long Island side was a well known fact, and the actual losing of the wind by the schooner was observed by persons on board of the vessels in tow at a distance sufficiently great for the tug to have stopped much sooner than she did. Her master confesses to negligence in saying that he did not observe it at the same distance off. It is very clear, that, at the time when he ought to have seen that the schooner had lost her wind, he might have so retarded the onward movement of his boat as to have allowed time for the schooner to get out of the way before he reached her. The consciousness that it was the duty of the tug to stop as soon as the schooner lost her wind, is shown by the averment of the answer that the engine of the tug was at once stopped when the schooner lost a large part of her headway by the temporary dying out of the wind. But that averment is not supported by the evidence.

But, irrespective of this, the weight of the evidence is, that the tug undertook to get by the schooner by going between her and the Long Island shore, and that that caused the accident, coupled with the negligence of the tug in getting up so near to the schooner as to make it necessary for her either to hit the schooner or to attempt to go around her.

The allegation in the answer that the Margaret Powell did not have a proper supply of pumps, and that she might have been kept afloat if the pumps she had had been properly used, is not sustained by the proofs.

No such matter is set up in the answer, as that the Margaret Powell might have been put ashore by the other tug, if those in charge of the Margaret Powell had cast off their lines sooner. If she could have been so put ashore, it was the business of the Niagara to see that measures were taken to that end, and to have the lines cut off or cast off. It is not shown that any orders to have the lines cast off sooner came from the Niagara. Moreover, I am not satisfied, by the evidence, that the vessel could have been beached.

There must be a decree for the libellants, with costs, with a reference to a commissioner to ascertain their damages.